IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------

GARY JEFFERSON           )
                             )
                             )
        Plaintiff         )
                             )
    -against-         )    Civil Action No.: 14-CV-02762
                             )
TVOne, LLC            )
JUPITER ENTERTAINMENT   )
TODD MOSS           )
        Defendants    )

------------------------------------------

## COMPLAINT

### Nature of Suit

1.  This is a suit for defamation, negligence, invasion of privacy and intentional infliction of emotional distress.

### Jurisdiction and Venue

2.  The Court has jurisdiction under 28 U.S.C. § 1332, which provides for original district court jurisdiction for diversity of citizenship and where the amount in controversy exceeds $75,000.00.

3.  Venue is proper in the District of Maryland under 28 U.S.C. § 1391, because the Plaintiff and resides in this District and a portion of the acts giving rise to this claim occurred in this District.

### Parties

4.  The Plaintiff, Gary Jefferson, is an adult individual who resides at 740 Romford Drive, Landover, Maryland 20785.

5.  Defendant TVOne, is a corporation organized under the state laws of Maryland, with its

1

principal place of business located at TVOne Headquarters, 1010 Wayne Avenue, Silver Spring MD 20910.

6.  Defendant Jupiter Entertainment, is a corporation organized under the laws of Tennessee with its principal place of business located at 8923 Linksvue Drive, Knoxville, Tennessee 37922.

7.  Defendant Todd Moss is an adult individual who resides in the state of New York.

8.  The individual defendant acted as an agent of Jupiter Entertainment and/or in his individual capacity.

9.  The individual defendant produced the television show at issue in this complaint.

<u>Jury Trial Demand</u>

10. The Plaintiff demands a jury trial.

<u>Summary of The Plaintiff's Claims</u>

11. The Plaintiff incorporates herein by reference all of the averments of paragraphs 1 through 10 with like force and effect as though set forth in full herein.

12. Defendant Jupiter produces a television series called Fatal Attraction which airs on Defendant TVOnes' network.

13. Defendant Todd Moss produced the particular episode at issue.

14. On or about March 2014, Fatal Attraction aired an episode called "Raging Bull".

15. Raging Bull depicted the brutal and vicious murder of Ms. Tawanna Barnes-Copeland, and the investigation that ensued.

16. Defendants hired an actor to portray the Plaintiff, who, according to the Defendant, was the main suspect in Ms. Barnes-Copeland's murder; therefore, the Plaintiff was a main character on Raging Bull.

2

17. Actor depicted the role of Ms. Barnes-Copeland's romantic partner.

18. Actor also re-enacted scenes equivalent to those expected of romantically involved couples.

19. The manner in which Ms. Barnes-Copeland was murdered led investigators to think that the motive was revenge; this led to widespread media coverage and an all-out manhunt for the killer.

20. Defendants stated that the Plaintiff was a prime suspect because The Plaintiff was jealous and/or outraged that shortly after being romantic with Ms. Barnes-Copeland, she decided to end things with The Plaintiff and reunite with an ex-lover. The Plaintiff's rage, according to Defendants, caused The Plaintiff to kill Ms. Barnes-Copeland.

21. Defendants portrayed that somehow, Ms. Barnes-Copeland's family bought into the theory that the Plaintiff was the killer and they begin to demise The Plaintiff to the point of "hunting him down."

22. Defendants claim that Ms. Barnes-Copeland's cousin approached The Plaintiff with a gun as The Plaintiff was recording in a studio session and that this led to an altercation in which the police were later called to resolve.

23. Defendants go on to say that because of the attention the case received, The Plaintiff became fearful and began to evade the police by hiding out.

24. Defendants then portrayed The Plaintiff's arrest and/or incarceration.

25. Approximately two (2) to three (3) weeks after Ms. Barnes-Copeland's death, Ms. Barnes-Copeland's killer was arrested and remains incarcerated to date.

26. Defendants, therefore, knew that the Plaintiff was not the killer before, during and after

3

production of Raging Bull.

Count 1: Defamation

27. The Plaintiff incorporates herein by reference all of the averments in paragraphs 1 through 27 with like force and effect as though set forth in full herein.

28. Most, if not all, of the defendants' assertions are false.  Alternatively, defendant's assertions were intentionally inflamed to inflict outrage on the Plaintiff and entice viewers.

29. Defendants' conduct by way of statements and portrayals constitute slander.

30. Defendants' portrayal that the Plaintiff was a criminal constitutes slander per se.

31. The Plaintiff and Ms. Barnes-Copeland were not romantically involved to the extent portrayed by the defendants; they were friends, at best, who, at one or two times, engaged in consensual sexual activity.  The defendant did not enter Ms. Barnes-Copeland home the night before she was murdered, nor did he spend the night.

32. The Plaintiff never hid from the police.  In fact, the Plaintiff never altered, eluded or otherwise evaded the police because The Plaintiff continued with his daily routine.  Furthermore, the police picked up the Plaintiff for questioning at his job approximately two (2) days after the murder.  And, The Plaintiff's discussions with police included the fact that he had Ms. Barnes-Copeland car, so at no point did he avoid discussing that and/or fail to disclose it.

33. The Plaintiff has no arrest record to date.

34. Defendants' statements impute to The Plaintiff conduct akin to a criminal.

35. Defendants' communication severely harmed The Plaintiff's reputation as an individual and an aspiring artist.

36. Defendants conducted little to no investigation concerning the truth or veracity of their

4

defamatory statements.

37. In fact, the defendants' defamatory statements were made intentionally and without concern whether the statements were true. The false statements have harmed the Plaintiff.

38. The defendants' defamatory statements were made intentionally or with reckless disregard to the truth or veracity of the statements. The defendants knew their statements would harm the Plaintiff because not only did they use his full name Gary Jefferson, they repeatedly used his nickname "Bo" ensuring that the world would know the Plaintiff's identity without question.

39. By defendants' own admission, Fatal Attraction is "A gripping true-crime documentary series that features the real-life stories of passionate, dangerous, and deadly romances. Driven by powerful, first person perspectives, Fatal Attraction explores what happens when passion gives way to obsession, and ordinary people are driven to commit horrible and heinous acts. Because love doesn't just hurt... It can kill."

40. Raging Bull was not driven by powerful, first person perspectives because defendants never interviewed and/or otherwise communicated with The Plaintiff—whom, by their admission, was a prime suspect and thus should have played a key role in depicting the truth.

41. The intent behind Fatal Attraction is clear in that what it portrays is gruesome and those associated and/or involved with the "romance" is evil.

42. The defendants' defamatory statements were made publicly and were intended to be made public by virtue of this being a television show which broadcasts throughout the United States at a minimum.

43. The conduct of the defendants has been sufficiently outrageous as to entitle the Plaintiff,

Gary Jefferson, to punitive damages. Specifically, Fatal Attraction affected The Plaintiff's

employment opportunities, credibility, artistic opportunities and caused psychological and

emotional trauma and suffering.

44. Since the time that Raging Bull aired, defendants took the remedial measure of removing

the episode from public view for a short stint. Harm to the Plaintiff had already occurred by that

point. Therefore, punitive damages are appropriate to deter the defendants' future outrageous

conduct.

45. Moreover, on Monday, August 4, 2014, defendants had the audacity to air Raging Bull

again. This time, however, they changed the title from Raging Bull to Raging Revenge and they

altered the Plaintiff's name from Gary Jefferson to Larry Thompson. Defendants' actions in

airing after undersigned counsel brought the sensitivity of the issue to the defendants shows a

complete and total disregard for the Plaintiff. Defendants' did not bestow upon The Plaintiff a

courtesy by changing his name.

Count II: Negligence

46. The Plaintiff incorporates herein by reference all of the averments of paragraphs 1

through 44 with like force and effect as though set forth in full herein.

47. Defendants owed the Plaintiff a duty to accurately depict him and his involvement with

Ms. Barnes-Copeland. Alternatively, defendants had a duty to investigate, interview appropriate

persons, conduct research and/or otherwise gather necessary facts to depict the truth accurately.

This rings especially true since it is reasonable to conclude that the actor portrayed as the

Plaintiff was paid to appropriate The Plaintiff's likeness. Defendants could have easily spoken to

the Plaintiff to ensure that the portrayal(s) would be accurate. Inasmuch as Defendant's

6

consumed time and money on a paid actor, Defendants could have applied the same resources, at no cost, in to retrieve the truth from the Plaintiff.

48. Defendants breached that duty when it failed to, at a minimum, interview or communicate with The Plaintiff. Alternatively, defendants breached that duty by relying solely on narratives other than those from the Plaintiff.

49. Defendants' conduct caused the Plaintiff harm such that he now suffers from employment losses and emotional damage, and but for the defendants' conduct, The Plaintiff would not have suffered those elms.

50. The Plaintiff has economic and emotional damages.

### Count III: Invasion of Privacy

51. The Plaintiff incorporates herein by reference all of the averments of paragraphs 1 through 49 with like force and effect as though set forth in full herein.

52. Defendants intentionally entered upon the solitude and seclusion of the Plaintiff. Additionally, the defendants intruded upon the Plaintiff's private affairs and concerns.

53. The Plaintiff's personal affairs are not a matter of public concern such that defendant's conduct was warranted. Defendants could have stated the truth about the relationship between the Plaintiff and Ms. Tawanna Barnes-Copeland, which was that they were friends; beyond that, defendants' statements were an absolute intrusion.

54. The aforementioned intrusion upon seclusion was highly offensive to a reasonable person.

55. Defendants' conduct was outrageous and entitles the Plaintiff to an award of punitive damages.

7

## Count IV: Intentional Infliction of Emotional Distress

56. The Plaintiff incorporates herein by reference all of the averments of paragraphs 1 through 53 with like force and effect as though set forth in full herein.

57. Defendants' conduct, as described above, was intentional and reckless.

58. Defendants' conduct was extreme and outrageous.  Defendants intended to harm The Plaintiff.

59. Defendants' conduct has caused severe physical and emotional distress to The Plaintiff.

60. Defendants' conduct, pre-remedial measure, was ongoing and directly caused by defendant' placing the episode on its website for public view.

61. Defendants' conduct has been sufficiently outrageous as to entitle the Plaintiff to an award of punitive damages.

## Prayer for Relief

WHEREFORE, The Plaintiff, Gary Jefferson, demands judgment as follows:

1. An award of general damages of no less than $100,000.00 for the defendants' wrongful acts;

2. An award of special damages of no less than $100,000.00 for the defendants' wrongful acts;

3. An award of costs and disbursements incurred in this action, as provided by state and federal law;

4. An award of punitive damages of no less than $250,000.00 for the defendants' reprehensible and outrageous conduct;

5. An award of punitive damages of no less than $100,000.00 to deter the defendants' future

8

reprehensible and outrageous conduct; and,

6. A permanent injunction barring Defendants' from ever airing Raging Bull or its progeny.

Respectfully Submitted,
/s/

BY:    _____
       Lanet Scott, Esquire
       Bar Number 18867
       P.O. Box 471323
       District Heights, MD 20753
       P: (202) 341-5715
       F: (202) 526-5819
       E: lscottlawoffice@gmail.com
       Attorney for the Plaintiff